UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOYCE BALDWIN,

      Plaintiff,

v.                                                    CASE No. 8:13-CV-2963-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was fifty-two years old at the time her insured status expired and who is a college graduate, has worked as an accounting clerk and hairstylist (Tr. 21, 33). She filed a claim for Social Security

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

disability benefits, alleging that she became disabled due to recurrent depression, attention deficit/hyperactivity disorder (from childhood), migraine [headaches], fibromyalgia, carpal tunnel syndrome, irritable bowel syndrome, and gastroesophageal reflux disorder (Tr. 160). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that, as of the date last insured, which was December 31, 2011, the plaintiff had severe impairments of major depression, anxiety, and attention hyperactivity disorder (ADHD) (Tr. 14). She concluded that, with these impairments, the plaintiff had through the date last insured "the residual functional capacity to perform a full range of work at all exertional levels and is limited to skilled or semi-skilled work" (Tr. 17). However, in her hypothetical question to the vocational expert, the law judge stated the plaintiff's residual functional capacity was limited to "light work which was unskilled or semi-skilled, and does not involve more than occasional interaction with co-workers, supervisors or the public" (Tr. 55). Because the law judge relied upon the

vocational expert's answer to this hypothetical question, this statement of the plaintiff's residual functional capacity is the operative one.[2]

The law judge found that these restrictions prevented the plaintiff from returning to past work (Tr. 21). However, based upon the testimony of a vocational expert, the law judge ruled there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as cleaner/housekeeper (Tr. 22). Accordingly, the law judge ruled that the plaintiff was not disabled through the date last insured (Tr. 23). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less

---

[2]Although the residual functional capacity stated in the decision does not match the functional limitation set forth in the hypothetical question, that does not constitute reversible error in these circumstances. Thus, the hypothetical question did not omit any functional limitations set forth in the residual functional capacity determination. To the contrary, the hypothetical question was more restrictive than the residual functional capacity finding.

than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, furthermore, the plaintiff must show that she became disabled before her insured status expired on December 31, 2011. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).[3]

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

---

[3]Therefore, the plaintiff's references to establishing disability by a preponderance of the evidence (Doc. 17, p. 26) are inapplicable at this level of review.

III.

The plaintiff challenges the law judge's decision on three grounds, two of which contain sub-arguments (Doc. 17, p. 2). None of the contentions is meritorious.

A. The plaintiff contends that the law judge's determination of her mental residual functional capacity violates Social Security Rulings 96-8p and 85-16 (id., pp. 5-7). This argument is meritless.

Social Security Ruling 96-8p states the Social Security Administration's policies regarding the assessment of residual functional capacity. 1996 WL 374184 (S.S.A.). Further, Social Security Rulings 96-8p and 85-16 specify mental functions necessary to perform work, such as the ability to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers and usual work situations; and to deal with changes in a routine work setting. Id. at *6; 1985 WL 56855 at *1 (S.S.A.). The plaintiff contends that the law judge's failure to discuss each of those functions in the decision, and the "lack of detail" in the mental residual functional capacity, violates these Social Security Rulings (Doc. 17, pp. 5-7).

In the first place, the Eleventh Circuit has held that Social Security Rulings do not have the force of law. Miller v. Commissioner of Social Security, 246 Fed. Appx. 660, 662 (11th Cir. 2007) (agency rulings do not bind the court); B.B. on behalf of A.L.B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981) ("the agency's ruling does not bind this court"). Thus, even if there had been a failure to comply with the Social Security Rulings, that would not constitute reversible error.

Furthermore, Social Security Ruling 96-8p merely provides guidance in assessing a claimant's residual functional capacity. Thus, as the Eleventh Circuit has held, there is nothing in SSR 96-8p that requires the law judge to make a written assessment of each of the factors. See Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007) (SSR 96-8p does not require the law judge to address every limitation in the decision; only to consider those factors); Castel v. Commissioner of Social Security, 355 Fed. Appx. 260, 263 (11th Cir. 2009).

Moreover, the decision shows that the law judge complied with Social Security Rulings 96-8p and 85-16. Thus, the law judge found that the plaintiff had severe mental impairments of major depression, anxiety, and

attention hyperactivity disorder (Tr. 14). Accordingly, she addressed the plaintiff's work-related mental abilities on a function-by-function basis when she evaluated the four pertinent functional areas, and rendered a finding about the degree of limitation as to each category, in accordance with 20 C.F.R. 404.1520a (Tr. 16-17). Castel v. Commissioner of Social Security, supra, 355 Fed. Appx. at 263. Specifically, the law judge found that the plaintiff's mental impairments caused no difficulty in activities of daily living; mild difficulties in social functioning; moderate limitation in concentration, persistence or pace; and no episodes of decompensation (id.). In order to accommodate those limitations, the law judge in her hypothetical question limited the plaintiff to "unskilled or semi-skilled work" that "does not involve more than occasional interaction with co-workers, supervisors or the public" (Tr. 55).

B.    The plaintiff also argues, based on Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1180-81 (11th Cir. 2011), that the limitation to unskilled or semi-skilled work in the residual functional capacity does not sufficiently account for a moderate limitation in concentration, persistence or pace (Doc. 17, pp. 8-11 n.20). However,

Winschel does not state such a holding; rather, it merely states that a hypothetical question to a vocational expert must either explicitly, or implicitly, account for limitations in concentration, persistence, or pace. 631 F.3d at 1181.

This reading of Winschel is confirmed by my examination of the district court record in that case. The error in Winschel was that, although the law judge found that the plaintiff had a moderate limitation in concentration, persistence or pace, the hypothetical question to the vocational expert contained no restriction regarding that limitation. See Case No. 6:08-CV-1750-DAB (Doc. 14, p. 12). Rather, the only limitation was to "a range of sedentary and or light work with a sit/stand option" (id.). Thus, the Court of Appeals had no occasion to determine whether a restriction to simple routine work was adequate if there was a moderate limitation in concentration, persistence or pace. All the Court decided was that, if there was such a limitation, a hypothetical question that contained no mental restriction at all was inadequate.

As the Commissioner points out, the court in Winschel said that "when medical evidence demonstrates that a claimant can engage in simple,

routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." 631 F.3d at 1180. Furthermore, the Eleventh Circuit has confirmed in several cases subsequent to <u>Winschel</u> that a limitation to unskilled work or simple tasks adequately addresses a plaintiff's moderate limitations in concentration, persistence or pace where the record shows that the plaintiff could perform such tasks. Thus, the Eleventh Circuit summarized in <u>Pinion</u> v. <u>Commissioner of Social Security</u>, 522 Fed. Appx. 580, 582 (11th Cir. 2013):

> Where an ALJ determines at step two of the sequential evaluation process that the claimant's mental impairments caused limitations in concentration, persistence, or pace, the ALJ must include those limitations in the hypothetical questions posed to the VE. <u>Winschel</u>, 631 F.3d at 1180-81. However, the ALJ may instead include in the hypothetical questions the limitation that the claimant is restricted to unskilled work if the medical evidence shows that the claimant can perform simple, routine tasks or unskilled work despite her limitations in concentration, persistence, or pace.

<u>See</u>, <u>e.g.</u>, <u>Thornton</u> v. <u>Commissioner of Social Security</u>, __ Fed. Appx. __, 2015 WL 542323 at *6 (February 11, 2015) ("simple, non-detailed tasks"

accounts for the moderate limitation in concentration, persistence or pace);

Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 872 (11th Cir.

2011) (restriction to simple tasks accounts for moderate limitations in

concentration, persistence or pace); Lee v. Commissioner of Social Security

Administration, 551 Fed. Appx. 539, 541 (11th Cir. 2014) (law judge

"implicitly accounted for [the plaintiff's moderate] limitations in

concentration, persistence and pace when he imposed a limitation of simple

work").

     Those cases are analogous to this circumstance because unskilled

work involves simple tasks. Thus, "[u]nskilled work is work which needs

little or no judgment to do simple duties." 20 C.F.R. 404.1568(a).

     It is recognized that the residual functional capacity restricted the

plaintiff to unskilled or semi-skilled work. The inclusion of semi-skilled

work renders the limitation problematic. Regardless, the inclusion of semi-

skilled work is, at most, harmless error. The type of job identified by the

vocational expert and found by the law judge in determining that the plaintiff

was not disabled was Cleaner/Housekeeper, which is unskilled work (Tr. 22).

Consequently, the inclusion of semi-skilled work in the residual functional capacity had no effect on the law judge's decision.

Moreover, in this case, the law judge's limitation to unskilled work sufficiently accounts for the plaintiff's moderate limitation in concentration, persistence or pace because the medical evidence supports such a finding.  In this regard, the law judge gave significant weight to the opinions of non-examining reviewing psychiatrist Nancy Dinwoodie, and non-examining reviewing psychologist Leigh Rosenberg, who opined that, despite moderate limitations in maintaining concentration, persistence or pace, the plaintiff was capable of performing the mental demands of non-complex work (see Tr. 17, 20, 466-82, 512).

Thus, Dr. Dinwoodie opined that, due to affective disorders, the plaintiff had moderate limitations in concentration, persistence or pace (Tr. 466, 476).  However, Dr. Dinwoodie added that, notwithstanding this limitation, "Cl[aimant] is capable of sustaining concentration for task completion. Cl is capable of completing a full work day and week" (Tr. 482).  Additionally, non-examining reviewing psychologist Rosenberg "reviewed all the evidence in the file" and concurred with Dr. Dinwoodie's

opinions (Tr. 512). Notably, the record does not contain a contrary opinion from an acceptable medical source.

For these reasons, the plaintiff's argument that her moderate deficit in concentration, persistence or pace was not accommodated by a limitation to unskilled work is meritless.

C. The plaintiff's next contention is that the law judge "erred in assigning little weight to the opinion of [her] longtime therapist," Sharon Krieger (Doc. 17, pp. 2, 11-19). Since 2004, the plaintiff has been treated by Krieger, an advanced registered nurse practitioner, at Building New Horizons, Inc. (Tr. 18, 548, 552).

In April 2012, which was almost four months after the plaintiff's insured status expired, nurse Krieger completed a Mental Residual Functional Capacity Questionnaire on the plaintiff's behalf, in which Krieger made markings on a checklist indicating that the plaintiff has "[n]o useful ability to function," or that she is "[u]nable to meet competitive standards," in 21 out of 25 categories of mental abilities, including basic functions such as "remember[ing] very short and simple instructions" and "[a]sk[ing] simple questions" (Tr. 548-52).

Additionally, Krieger placed marks opining that the plaintiff has sustained a "[l]oss of intellectual ability of 15 IQ points or more" and that she would be absent from work more than four times a month due to her impairments (Tr. 549, 552). Krieger opined that these limitations applied since January 2005 (Tr. 552). Krieger's diagnoses of the plaintiff include major depression (severe) and ADHD; and she assigned the plaintiff a GAF (Global Assessment of Functioning) score of 55 (Tr. 548).[4] Krieger identified, among other clinical findings, mood swings, poor memory, concentration and attention (id.).

The law judge discussed in the decision nurse Krieger's treatment of the plaintiff (Tr. 14, 15, 17, 20-21) and stated the following with regard to the opinions marked in the Mental Residual Functional Capacity Questionnaire (Tr. 21):

> Ms. Krieger completed a medical source statement and indicated that the claimant had multiple symptoms including decreased energy, mood

---

[4]The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers").

disturbance, and difficulty thinking or concentrating. She further opined that the claimant was unable to meet competitive standards in areas such as understanding and remembering very short and simple instructions and had no useful ability to function in areas such as remembering work-like procedures and carry out very short and simple instructions. She also indicated that the claimant had a reduced intellectual functioning after her cancer treatment but could manage her benefits in her own best interest. Ms. Krieger, further opined that the claimant's impairments would cause her to be absent [from] work more than four days per month (Exhibit 23F). The undersigned assigns partial weight to this opinion. In particular, the undersigned assigns significant weight to Ms. Krieger's opinion that the claimant could manage her own benefits as it is consistent with Dr. [Michael] Greenberg's opinion as well as the claimant's ability to count change and handle a savings account (Exhibits 5E and 12F). However, the undersigned assigns little weight to the remaining portions of Ms. Krieger's opinion. Specifically, the record does not show any objective testing to corroborate a decline in the claimant's intellectual functioning. Ms. Krieger's severe limitations are not consistent with the GAF scores of 55 assessed during treatment indicating only moderate symptoms or difficulty. Moreover, treatment notes do not document any such severe limitations such as severe impairments that would cause her to be absent from work (Exhibits 9F, 17F, 21F, and 22F).

The law judge stated further in the decision (Tr. 15):

> ... GAF scores of 55 indicat[e] moderate symptoms
> or difficulty in social, occupational, or school
> functioning. Mental status examinations were
> overall unremarkable, and a more stable mood was
> often noted (Exhibits 9F, 17F, 21F and 22F). For
> example, mental status examination in October
> 2010 showed a stable mood and was unremarkable
> (Exhibit 17F). Ms. Krieger assessed the claimant
> with a GAF of 55 in December 2010, but mental
> status examination was unremarkable other than
> only mild depression (Exhibit 17F). As recently as
> April 2012, mental status examination continued to
> be unremarkable (Exhibit 22F).

Moreover, as the law judge indicated (see Tr. 21), Krieger's opinion in the

Questionnaire is internally inconsistent, as Krieger's opinion that the plaintiff

could manage her benefits in her own best interest (Tr. 552) does not

correspond with Krieger's opinion that the plaintiff was extremely or

seriously limited in performing basic mental functions, such as understanding

short and simple instructions, or asking simple questions and requesting

assistance (see Tr. 550).

Furthermore, the law judge noted that the opinions and

assessments of consulting and examining physicians were not consistent with

debilitating mental impairments (Tr. 15, 17, 20). The law judge added,

moreover, that the medical record reflects that treatment has been

-16-

conservative, and that the plaintiff's attention and concentration has improved on medication (Tr. 19).

Additionally, the law judge found that Krieger's opinion of debilitating mental limitations could not be squared with the plaintiff's varied activities of daily living. Thus, the law judge noted that the plaintiff's activities, such as recording a song, practicing tai chi and Feldencrest, babysitting her niece and nephew, attending Buddhist meetings, using a computer, and researching and sewing historical costumes, require concentration, and the plaintiff's participation in these activities belie disabling mental symptoms (Tr. 16, 17, 19, 20). Furthermore, in terms of social functioning, the law judge stated (Tr. 20-21):

> [T]he objective medical record does not show the claimant has any problems getting along with others .... For example, she has good relationships with her parents and has friends (Exhibit 12F) and lives with them (Exhibit 5E). She visited with her sister in Connecticut (Exhibit 21F). She attends meetings weekly Buddhist sittings and corresponded with historical reenactment friends on the computer (Exhibit 5E).

The law judge appropriately considered the plaintiff's activities of daily living in discounting the weight given to Krieger's extreme opinion of mental

functional limitations. See Forrester v. Commissioner of Social Security, 455 Fed. Appx. 899, 901 (11th Cir. 2012) (a law judge does not need to give a treating physician's opinion considerable weight if the claimant's daily activities contradict the opinion); Pinion v. Commissioner of Social Security, supra, 522 Fed. Appx. at 583.

Notably, as a nurse practitioner, Krieger is considered an "other source[]" whose opinion is not entitled to the same weight as an acceptable source, such as a psychiatrist or psychologist. 20 C.F.R. 404.1513(d)(1). The fact that Krieger was not an acceptable medical source provides a valid basis to discount her opinion. Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998), cert. denied, 524 U.S. 1124 (1999). Furthermore, the law judge's explanation for rejecting Krieger's opinion of disability would have been sufficient to reject even a treating physician's opinion. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (a treating physician's opinion may be rejected when the opinion is inconsistent with the physician's own medical records or where the evidence supported a contrary finding).

In addition, the conclusory nature of Krieger's assessment is sufficient to discount those opinions. See Crawford v. Commissioner of

Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory"); 20 C.F.R. 404.1527(c)(3) ("[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion."); Burgin v. Commissioner of Social Security, 420 Fed. Appx. 901, 903 (11th Cir. 2011) (the adjudicator "was free to give little weight to the conclusory assertions contained in the questionnaires because they merely consisted of items checked on a survey, with no supporting explanations"). Thus, Krieger opined extreme mental functioning limitations without meaningfully providing the basis for these extreme limitations (see Tr. 550-51).

Moreover, the attention with which Krieger completed the Questionnaire is questionable, as Krieger marked that the plaintiff was more severely impaired in her ability to engage in unskilled work than semi-skilled or skilled work (compare Tr. 550 with Tr. 551). Thus, for example, Krieger marked that the plaintiff was unable to meet competitive standards for carrying out detailed instructions (Tr. 551), but marked that the plaintiff has the greater limitation of no useful ability to function in carrying out very short

or simple instructions (Tr. 550). These opinions are not only inconsistent, but illogical.

The plaintiff argues, however, that "[t]he record clearly demonstrates mental disturbances severe enough to warrant the limitations outlined" in the Questionnaire (Doc. 17, p. 17). In this regard, the plaintiff cites to Krieger's treatment records stating the plaintiff's reports of anxiety and suicidal ideation, and some abnormalities on mental status examination, such as a depressed mood, being hyperverbal, or tangential or circumstantial speech (id., p. 15). The plaintiff also notes the consultative examiner's diagnoses of ADHD, dysthmic disorder, generalized anxiety disorder, and borderline personality disorder (id., p. 17). However, it is the functional limitations from an impairment, and not the diagnosis of an impairment, that is determinative in an evaluation of disability. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

Moreover, the issue is not whether there is evidence that could support Krieger's opinion, but rather whether the plaintiff has presented evidence that compels the law judge to accept Krieger's opinion of the plaintiff's mental limitations. See Adefemi v. Ashcroft, supra, 386 F.3d at

1027. Here, the plaintiff's identification of some mental abnormalities did not compel the law judge to accept Krieger's opinion of debilitating mental functional limitations.

The plaintiff also contends, erroneously, that "no opinion of record contradicts [Krieger's] opinion" (Doc. 17, p. 17). As discussed above, that assertion is erroneous, as a psychiatrist and a psychologist both opined that the plaintiff has only mild limitations in activities of daily living and social functioning, and moderate limitations in concentration, persistence or pace. See Oldham v. Schweiker, 660 F.2d 1078, 1086 (5th Cir. 1981) (law judge may give substantial weight to the opinion of a non-examining reviewing source who is considered an expert in Social Security disability evaluation and whose opinion is consistent with the overall record); Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008); 20 C.F.R. 404.1527(e)(2)(i).

The plaintiff argues further that the law judge should have disregarded nurse Krieger's assessments of GAF scores of 55 (Doc. 17, pp. 17-18). As the law judge noted, a GAF score of 55 indicates no more than moderate limitations in some areas of mental functioning, which is plainly

inconsistent with Krieger's opinion in the Questionnaire of debilitating mental limitations.   Clearly, it was reasonable for the law judge to consider the inconsistency between Krieger's own assessment of the plaintiff's GAF scores and her opinions of extreme mental limitations.

Next, the plaintiff quibbles with the law judge's finding that Krieger's opinion that the plaintiff's intellectual quotient has declined by 15 points or more is unsupported by objective evidence (id., p. 18). The plaintiff contends that the opinion is supported by consultative examiner Dr. Allen Spiegel's opinion that the plaintiff has a "mild cognitive impairment" (id.). However,  Dr. Spiegel did not conduct IQ testing, so his opinion in that respect is also speculation. In any event, his opinion of a "mild" cognitive impairment (Tr. 557) certainly does not indicate a drop of 15 or more IQ points (Tr. 549). Therefore, the plaintiff's argument in this regard–including the frivolous contention that her therapist is "by far [in] the best position to provide an opinion regarding [the plaintiff's] perceived cognitive decline" (Doc. 17, p. 19)–is meritless.[5]

---

[5]The plaintiff contends, in a footnote, that "the ALJ neglected to order neuropsychological testing to confirm the degree to which [she] is cognitively impaired" (Doc. 17 p. 18, n.52). This contention is meritless because "the claimant bears the burden of proving that [s]he is disabled." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir.

The plaintiff also contends that the law judge failed to evaluate Krieger's opinion using the factors set forth in 20 C.F.R. 404.1527(d) (Doc. 17, pp. 19-21).  Initially, it is noted that the law judge "is not required to explicitly address each of [the §404.1527] factors" in the decision.  Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011). Regardless, the law judge's decision encompasses all of those factors.  Thus, the law judge acknowledged Krieger's long-term therapist relationship with the plaintiff, and that Krieger's opinion of extreme mental functioning limitations was not supported by Krieger's own treatment notes, the opinions of acceptable medical sources, and the record as a whole (see Tr. 14-21). Therefore, this contention is meritless.

D.  The plaintiff's final argument is that the law judge erred by failing to find that the plaintiff's migraine headaches constituted a severe impairment (Doc. 17, p. 21).  This argument lacks merit since the law judge's assessment is reasonable.  In all events, this contention does not support

_____

2003).  Furthermore, the opinion that the plaintiff's IQ score decreased by 15 or more points appeared in evidence generated by the plaintiff months after the date she was last insured, and the Commissioner has no obligation to develop the record at that point.  See id. (Commissioner will develop the medical history for the twelve months preceding the disability application).

reversal because the plaintiff does not even identify any purported functional limitation due to migraine headaches.

The regulations define a nonsevere impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 404.1521(a). The court of appeals has stated that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Notably, the law judge acknowledged this principle in her decision (Tr. 13). Regardless of the alternate formulation, the standard set out in the regulations, and the one I will apply, is that a nonsevere impairment does not significantly limit a claimant's ability to do work activities. See Dixon v. Barnhart, 151 Fed. Appx. 810, 812 (11th Cir. 2005)(unpub. dec.), cert. denied, 547 U.S. 1027 (2006) (the claimant "did not have a severe impairment because he was not significantly limited by a physical or mental impairment").

At the hearing, the plaintiff testified that she experiences migraine headaches "two a week, three a week," and that on her migraine days she lies in bed in a dark and quiet room (Tr. 35, 38, 45). The law judge noted that the plaintiff was diagnosed with migraine headaches, and iterated her testimony that she had migraine headaches "two to three times each week with severe ones lasting one-and-a-half days and are more frequent with stress" (Tr. 15, 18). However, the law judge did not find her migraine headaches to be a severe impairment during the pertinent time period, explaining that "[h]er treating physician noted continued improvement and did not require any additional visits regarding her headaches (Exhibits 20F and 24F)" (Tr. 15).

There is substantial evidence supporting the law judge's conclusion. The medical record reflects the plaintiff was treated by neurologist Amos Gipson, M.D., for the chief complaint of "Headache" (see, e.g., Tr. 380). The treatment notes for the pertinent time period consistently reflect that a change in medication had beneficial effects (see Tr. 380, 496, 498). Further, the plaintiff was not experiencing any neurological symptoms (see, e.g., Tr. 381), and the physician continued her on the same medication

regimen because it was successful (Tr. 380, 498).  Dr. Gipson's last treatment

note in the record summarizes that the plaintiff (Tr. 553):

> has had migraine for a long[]time, which for many
> years was not very responsive to medication;
> however, when I saw her last, 6 months ago, she
> was doing quite well and has continued to do so.
> She points out that she has taken Imitrex perhaps
> yesterday and prior to that it has probably been []
> a month ago, and in general, she is feeling much
> better.  I think since that is the case, it makes no
> sense to consider making changes and furthermore,
> since she is doing this well, I will not make a
> specific return appointment for this clinic, but of
> course will be happy to see her at any time should
> the need arise.  The patient is doing well ...
> fortunately headaches have not been a major
> problem.

Furthermore, there is no evidence from any other medical source that

migraine headaches would impose a functional limitation.

Thus, the plaintiff has not pointed to anything in the medical

record compelling the law judge to conclude that she experiences migraine

headaches of the frequency and severity to which she testified.  Notably, the

law judge did not find the plaintiff fully credible, and that credibility

determination is not challenged here.  Therefore, the plaintiff cannot rely on

her discredited testimony to establish a severe impairment.

The plaintiff argues that the law judge erred because the medication has "helped somewhat but failed to eliminate her headaches" (Doc. 17, pp. 22-23). However, this argument erroneously assumes that the law judge found that the plaintiff did not have migraine headaches. The law judge did not make such a finding. Furthermore, the law judge could reasonably conclude, based on the neurologist's treatment notes, that her migraine headaches had decreased in frequency sufficiently to not interfere significantly with her ability to work (see, e.g., Tr. 496 (noting that the headaches are severe "from time to time"), Tr. 553 (noting that a month had passed since she had taken migraine headache medication)).

The plaintiff also argues, disingenuously, that her "treating neurologist deemed her migraine headaches so severe as to preclude work" (Doc. 17, p. 21). The neurologist did not state such an opinion. Rather, Dr. Gipson mentioned in a treatment note that the plaintiff had begun to "explore some very loaded psychologic[al] issues," after which he commented (Tr. 496):

> [T]his is an enormous psychological expenditure of energy and I cannot see how she will be able [to] work at this time though maybe someday that will change. I do not think it is practical at this time.

Thus, this is clearly not a medical opinion regarding the severity of the plaintiff's migraine headaches. Rather, it is a vague and speculative opinion regarding how the plaintiff's emotional state will affect her ability to work. The law judge did not err by failing to discuss it in the decision. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (the law judge is not required to refer to every piece of evidence in the decision).

In addition, as the Commissioner correctly points out, the plaintiff cannot prevail on this issue simply by showing that the law judge should have characterized her migraine headaches as a severe impairment. The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the law judge found that the plaintiff has severe impairments, she did not stop prematurely at step two, but proceeded on to the next step in the sequential analysis. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

Therefore, in order to demonstrate reversible error based upon a mischaracterization of the severity of migraine headaches, the plaintiff must

show that she had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity. Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, supra, 791 F.2d at 1547).

The plaintiff does not mention, and certainly does not cogently assert, an argument compelling a conclusion that a specific limitation was omitted from the residual functional capacity due to the finding that her migraine headaches were a nonsevere impairment (see Doc. 17, p. 25) (vaguely asserting that the residual functional capacity fails to account "for the limitations" from the migraine headaches). See Adefemi v. Ashcroft, supra. Further, there is no opinion from any medical source, whether treating, examining or reviewing, that sets forth any functional limitations due to migraine headaches. Since there are no functional limitations due to migraine headaches, the plaintiff's residual functional capacity would not change

regardless of whether the law judge called that impairment severe or nonsevere.

In sum, the plaintiff has failed to show that characterizing her migraine headaches as a distinct severe impairment would have affected the law judge's determination of her residual functional capacity. Accordingly, this contention is meritless.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED.** The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 19th day of March, 2015.

Thomas G. Wilson
UNITED STATES MAGISTRATE JUDGE

-30-